1
2
3
4
5
6
7       **UNITED STATES DISTRICT COURT**

8       **NORTHERN DISTRICT OF CALIFORNIA**

9       **SAN FRANCISCO DIVISION**

10
11     THOMAS E. PEREZ, Secretary of Labor,          Case No. 12-cv-00116 WHO (NC)
        United States Department of Labor,
12                                                     **SECOND ORDER RE:**
                    Plaintiff,                         **DISCOVERY DISPUTES**
13
            v.                                         Re: Dkt. Nos. 110, 133, 134, 138,
14                                                     139
        SEAFOOD PEDDLER OF SAN RAFAEL,
15     INC., dba SEAFOOD PEDDLER;
        ALPHONSE SILVESTRI; RICHARD
16     MAYFIELD; FIDEL CHACON,

17                  Defendants.

18
19          Plaintiff and defendants continue to dispute numerous discovery issues, including

20     whether the Court should allow discovery regarding the immigration status of witnesses.

21     The Court held a hearing on August 28, 2013, addressing all unresolved disputes.  Based on

22     the parties' submissions and the arguments of counsel at the hearing, the Court orders as

23     follows:

24          1.      IDENTIFICATION OF CONFIDENTIAL INFORMANTS.

25          In her March 29, 2013, order, Judge Hamilton ordered plaintiff to identify

26     confidential informants by August 20, 2013.  Dkt. No. 92 at 2; *see also* Dkt. No. 81.  The

27     Court explained that "plaintiff has conceded that, at some point in the case, the need for the

28
        Case No. 12-cv-00116 WHO (NC)
        SECOND ORDER RE: DISCOVERY
        DISPUTES

1   parties to prepare for trial will outweigh her qualified privilege to withhold the informants'

2   identities. Thus, the only remaining issue for the court to decide is when that balance-

3   shifting occurs." Dkt. No. 92 at 2.

4       Plaintiff now seeks an extension of the August 20 deadline because of defendants'

5   "brazen attempts to threaten and intimidate employees from participating in this case." Dkt.

6   No. 139 at 3. In setting this deadline, however, Judge Hamilton already considered the

7   arguments made by plaintiff regarding the threat of retaliation by defendants and carefully

8   weighed the competing interests. *See* Dkt. Nos. 81, 92. Plaintiff has not presented any new

9   material facts or a change of law, or any other reason justifying a reconsideration of Judge

10  Hamilton's March 29 order. *See* Civil L.R. 7-9(b). Plaintiff argues that the chilling effect

11  of the subpoena issued by defendants to Martin Flores, former Seafood Peddler employee

12  Hector Hernandez's supervisor at Hernandez's current employer, justifies continued

13  application of the informant's privilege. Dkt. No. 139 at 3-4. However, this Court

14  substantially limited the subpoena and could grant appropriate relief against abusive

15  subpoenas in the future if necessary. *See* Dkt. No. 111.[1]

16      In connection with the request for extension of the August 20 deadline, plaintiff filed

17  a motion for administrative relief under Civil Local Rule 7-11 seeking in camera review by

18  the Court of the declarations of two non-party employee witnesses, submitted to show a fear

19  of retaliation if their names are revealed. Dkt. No. 138; *see Solis v. Best Miracle Corp.*, No.

20  08-cv-0998 CJC (MLG), 2009 WL 3709498, at *2 (C.D. Cal. Nov. 3, 2009) (granting

21  motion for protective order to prevent disclosure of employee-informants and stating that

22  "after *in camera* review of Plaintiff's sealed declarations, including declarations from

23  former employees, the Court concludes that Plaintiff has met her burden to demonstrate that

24  the informers have an objectively reasonable fear of retaliation."). Defendants oppose the

25  [1] Plaintiff also asserts that disclosure of confidential informants at this point (21 months after filing
    the complaint) would be "premature" and should be postponed to a "later pretrial stage." Dkt. No.
26  139 at 4. Yet unless this case progresses through discovery, it may never end, frustrating the
    desired "just, speedy, and inexpensive" determination of every action. Fed. R. Civ. P. 1. The
27  parties will have a further opportunity to discuss the case and trial schedule with Judge Orrick on
28  September 24, 2013.

    Case No. 12-cv-00116 WHO (NC)
    SECOND ORDER RE: DISCOVERY            2
    DISPUTES

1    request for in camera review arguing that their due process rights require that they be

2    afforded an opportunity to rebut plaintiff's evidence of retaliation.  Dkt. No. 144.  However,

3    because the Court has found that the declarations submitted by plaintiff in camera do not

4    present evidence of a threat of retaliation that justifies an extension of the August 20

5    disclosure deadline, there is no need for defendants to provide evidence in rebuttal.

6          Plaintiff's request for in camera review is granted and plaintiff must file the

7    declarations under seal by September 13, 2013.  Plaintiff's request for an extension of the

8    August 20 deadline and for reconsideration of Judge Hamilton's March 29 order is denied.

9    Plaintiff must identify the confidential informants as ordered by Judge Hamilton by

10   September 24, 2013.

11         2.    IMMIGRATION STATUS TESTIMONY.

12         Also pending before the Court are plaintiff's motion for protective order regarding U

13   Visas, Dkt. No. 133, and defendants' motion regarding their request to permit deposition

14   testimony on the subject of immigration status, Dkt. No. 134.  The primary question

15   presented by these motions is whether defendants should be allowed to obtain discovery

16   concerning the immigrations status of witnesses.  This issue was addressed in Judge

17   Hamilton's March 29 order.  Dkt. No. 92.  That order states that "defendants may not ask

18   any witness what their immigration status is, but to the extent that plaintiff objected to

19   'indirect' questions that may have some bearing on immigration status, that objection was

20   overruled."  *Id.* at 3:9-12.  The order further states that "if plaintiff's investigator injects this

21   subject during the course of his deposition, defendants are permitted to ask follow-up

22   questions of either the investigator himself or of any witnesses implicated by the

23   investigator's statements."  *Id.* at 3:12-14.

24         Plaintiff now contends that the March 29 order barring defendants from "ask[ing] any

25   witness what their immigration status is" applies to questions to any witness about the

26   immigration status of the witness himself or of any other person.  Dkt. No. 133 at 11-12.

27   The reason underlying the prohibition against questions about employees' immigration

28

Case No. 12-cv-00116 WHO (NC)
SECOND ORDER RE: DISCOVERY          3
DISPUTES

1   status is to avoid the chilling effect such disclosure could have upon their ability to

2   effectuate their rights, as acknowledged by the Ninth Circuit in *Rivera v. NIBCO, Inc.*, 364

3   F.3d 1057, 1064-70 (9th Cir. 2004); *see* Dkt. No. 66 at 17:15-19.  The Court agrees with

4   plaintiff that the chilling effect from such disclosure is present not only when the inquiry is

5   to an employee directly, but also when defendants are allowed to ask someone else about

6   that employee's immigrations status.  Accordingly, the March 29 order should be so

7   interpreted.

8       Plaintiff also requests a protective order prohibiting defendants from inquiring into

9   whether any witness or any other person in this case has filed a U Visa petition or from

10  seeking any information about U Visa petitions.  Dkt. No. 133 at 6, 12-20.  The Victims of

11  Trafficking and Violence Protection Act of 2000 "permits nonimmigrants (undocumented

12  immigrants) who are victims of serious crimes and who assist law enforcement in

13  investigating and prosecuting those crimes to apply for and receive 'U' visas." *Catholic*

14  *Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 871 (N.D. Cal. 2008) (citing 8 U.S.C. §§

15  1101(a)(15)(U), 1184(p), and 1255(m)).[2]  Plaintiff contends that questions about whether or

16  not an employee applied for, or was offered a U Visa, as well as inquiries as to the

17  substance of U Visa applications, would necessarily result in a direct inquiry into

18  employees' current immigration status expressly prohibited by the March 29 order.  Dkt.

19  No. 133 at 13.  While the Court agrees, this does not resolve the issue before it.

20      The Court's task is to balance the chilling effect from the disclosure of employees'

21  immigration status against defendants' interests in obtaining the information.  *Rivera*, 364

22  F.3d at 1064.  The March 29 order clarified that discovery as to employees' immigration

23  status could be appropriate if that subject is "injected" by plaintiff's investigator.  Dkt.

24  No. 92 at 3:9-12.  This clarification was in response to an issue raised by Seafood Peddler at the

25

26  [2] Plaintiff's request for judicial notice related to the subject of U Visas, Dkt. No. 110, is granted as
    to the existence of the documents but not as to the truth of their contents. *See* Fed. R. Evid. 201(b);

27  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).  The Court takes judicial notice
    only for the purposes of this order, and does not address the authenticity or admissibility of any of

28  the documents as exhibits at trial.

Case No. 12-cv-00116 WHO (NC)
SECOND ORDER RE: DISCOVERY                    4
DISPUTES

1    February 20, 2013, hearing before Judge Hamilton where it argued that "clearly

2    immigration status is now relevant because of the U-Visa issue that was introduced by the

3    investigator saying he took the statements from these witnesses in conjunction with giving

4    them a U-Visa" and that "the investigator testified that he – that U-Visas were used as part

5    of the conjunction [sic]."  Dkt. No. 90 at 52:17-54:1.  Seafood Peddler then asked if

6    defendants were allowed "to ask questions about the U-Visa process in the meetings that

7    they got the visas."  *Id.*  While Judge Hamilton explained that she expected the parties

8    would resolve these issues by themselves, she also stated that, if plaintiff's investigator

9    "injected the subject during the course of his deposition," defendants can ask follow-up

10   questions of him and the witnesses.  *Id.*

11       The parties now dispute whether plaintiff's investigator, Eastwood, "injected" the

12   immigration status subject within the meaning of Judge Hamilton's order.  Eastwood

13   testified that (1) one of his DOL colleagues, Jennifer Tse, was involved with the Seafood

14   Peddler case "to the extent necessary to coordinate any U-visa applications for

15   certification," Dkt. No. 146-2 at 3:1-6:16, and that (2) a meeting was held at the

16   Guatemalan consulate in San Francisco at which Eastwood, Ramon Hueracha, a Regional

17   Office Coordinator in charge of the U Visa program, and former Seafood Peddler

18   employees were present, and that statements were taken from at least some of the

19   employees at the meeting, *Id.* at 16:11-30:18.  Seafood Peddler's reference at the February

20   20, 2013, hearing to Eastwood "saying he took the statements from these witnesses in

21   conjunction with giving them a U-Visa," overstates his testimony.  Dkt. No. 90 at 52:21-14;

22   53 at 17-18.  At most, the testimony raises an inference that U Visas were a subject of

23   discussion between plaintiff's investigator and Seafood Peddler employees.[3]  It is unclear at

24

25   [3] While plaintiff argues that this evidence is irrelevant because the DOL has no authority to grant U
     Visas, plaintiff concedes that the DOL has a role in certifying that a U Visa applicant is a victim of
     a qualifying criminal activity and has been or is likely to be helpful in the investigation or
26   prosecution of that activity.  Dkt. No. 133 at 18.  Plaintiff also makes much of the fact that the DOL
     obtained statements from defendants' employees and filed the complaint in this case before the
27   meeting at the consulate took place.  Dkt. No. 151 at 5-6.  However, this fact does not preclude the
28   possibility that there were earlier communications with Seafood Peddler employees regarding the

1    this point, however, whether plaintiff in any way offered, provided, or was requested to

2    provide, U Visa certification to any Seafood Peddler employee in connection with the

3    investigation or prosecution of this case.  Moreover, even if plaintiff did so, if that

4    employee's testimony will not be relied upon by plaintiff in this case, the Court is not

5    inclined to find that plaintiff has "injected" the immigration status subject.  Accordingly, at

6    this stage, the Court finds that the U Visa subject has not been "injected" within the

7    meaning of Judge Hamilton's March 29 order.

8          Additionally, plaintiff argues that inquiry into the U Visa subject is barred by

9    8 U.S.C. § 1367(a) which provides that "in no case may" the Attorney General, or any other

10   official or employee of the Department of Justice, the Department of Homeland Security, or

11   the Department of State "permit use by or disclosure to anyone (other than a sworn officer

12   or employee of the Department, or bureau or agency thereof, for legitimate Department,

13   bureau, or agency purposes) of any information which relates to an alien who is the

14   beneficiary" of a U Visa.  Dkt. No. 133 at 14-16.  This prohibition "ends when the

15   application for relief is denied and all opportunities for appeal of the denial have been

16   exhausted."  8 U.S.C. § 1367(a); *see also* 8 C.F.R. § 214.14(e)(2) ("Agencies receiving

17   information under this section, whether governmental or non-governmental, are bound by

18   the confidentiality provisions and other restrictions set out in 8 U.S.C. § 1367.").  The

19   prohibition is subject to several specific exceptions set forth in 8 U.S.C. § 1367(b)(1)-(8).

20   Defendants do not address the statutory provision barring disclosure of information related

21   to a U Visa beneficiary or any of the exceptions, which do not appear to apply here.

22   Instead, they argue that they need this information because it is highly relevant to

23   impeachment and credibility.  This argument, which could be made in every case where a

24   witness is a U Visa beneficiary, appears to be foreclosed by § 1367(a).  Defendants have not

25   cited to any authority allowing the Court to disregard the statutory mandate of non-

26   disclosure in a case such as this one.  The only civil case relied upon by defendants to

27

28   subject of U Visas.

Case No. 12-cv-00116 WHO (NC)
SECOND ORDER RE: DISCOVERY          6
DISPUTES

1   support their request for U Visa discovery, *Camayo v. John Peroulis & Sons Sheep, Inc.*,

2   No. 10-cv-00772 MSK (MJW), 2012 WL 5931716 (D. Colo. Nov. 27, 2012), does not

3   address the non-disclosure provision.  The criminal cases cited by defendants are also

4   distinguishable because of the government's constitutional obligation to provide

5   exculpatory evidence to a criminal defendant under *Brady v. Maryland*, 373 U.S. 83 (1963)

6   and *Giglio v. United States*, 405 U.S. 150 (1972).  Defendants' argument that plaintiff here

7   has an obligation to provide exculpatory evidence because of plaintiff's assertions that

8   Seafood Peddler's employees were subject to threats of physical intimidation is not

9   persuasive.

10         Furthermore, during Eastwood's deposition plaintiff asserted the work product

11   privilege to a line of questions seeking to discover the identity of the group or class of

12   individuals who made applications for U Visa certification and who were present at the

13   Guatemalan consulate meeting.  *See* Dkt. No. 143 at 22-31.  Defendants now ask the Court

14   to overrule the objections and compel answers, arguing that the questions "had nothing to

15   do with attorney work, and according to Plaintiff, the U-Visa program is handled by a

16   different governmental department."  Dkt. No. 139 at 7.  However, the deposition transcript

17   shows that the basis for the work product objections was that the work in coordinating any

18   U Visa applications for certification was done at the direction of counsel, Dkt. No. 143 at

19   24:14-25:7, and that Eastwood's conversations regarding U Visas were at the direction of

20   counsel as well, Dkt. No. 146-2 at 12:18-14:12.

21         Under the work product doctrine, codified in Federal Rule of Civil Procedure

22   26(b)(3), "a party may not discover documents and tangible things that are prepared in

23   anticipation of litigation or for trial by or for another party or its representative (including

24   the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to

25   Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable

26   under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to

27   prepare its case and cannot, without undue hardship, obtain their substantial equivalent by

28

1 | other means." Fed. R. Civ. P. 26(b)(3)(A); *see also Hickman v. Taylor*, 329 U.S. 495, 511-

2 | 12 (1947).  The identity of interviewed witnesses could be deemed work product capable of

3 | revealing strategy.  *See Mitchell Eng'g v. City & County of San Francisco*, No. 08-cv-

4 | 04022 SI, 2010 WL 1853493, at *1 (N.D. Cal. May 6, 2010) (citing *In re MTI Tech. Corp.*

5 | *Sec. Litig. II*, No. 00-cv-0745, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002)).

6 | However, if plaintiff here intends to rely on the testimony of Seafood Peddler employees

7 | with whom Eastwood discussed the subject of U Visas, those employees will likely be

8 | disclosed as confidential informants.  Thus, the risk of disclosing legal strategy by

9 | compelling Eastwood to answer questions regarding the identity of witnesses is minimal

10 | and is outweighed by defendants' need to defend against the testimony of these witnesses.

11 | *See In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 429 (N.D. Cal. 2007) (granting motion

12 | to compel disclosure of identities of confidential witnesses); *In re Connetics Corp. Sec.*

13 | *Litig.*, No. 07-cv-02940 SI, 2009 WL 1126508 (N.D. Cal. Apr. 27, 2009) (same).  Similarly,

14 | even if the number of U Visa applications could be considered work product, *see* Dkt. No.

15 | 143 at 26, it is primarily factual and of minimal substantive content, and it is thus

16 | outweighed by the need for discovery.

17 | In conclusion, defendants may not ask questions of witnesses regarding U Visas

18 | unless (1) there is a factual basis showing that plaintiff offered, provided, or was requested

19 | to provide, U Visa certification to any Seafood Peddler employee in connection with the

20 | investigation or prosecution of this case; (2) that employee's testimony will be relied upon

21 | by plaintiff in this case; and (3) the employee is not a U Visa beneficiary within the

22 | meaning of § 1367(a)(2).

23 | 3.       ADDITIONAL DISCOVERY ISSUES RAISED BY PLAINTIFF.

24 | **(A)    Scope of discovery.**

25 | Next, plaintiff contends that the DOL is entitled to discovery concerning all of

26 | defendants' employees, not only the fourteen identified in the complaint and/or Exhibit A.

27 | Dkt. No. 139 at 1-2.  At the hearing, plaintiff stated that the DOL requested this discovery

28 |

Case No. 12-cv-00116 WHO (NC)
SECOND ORDER RE: DISCOVERY          8
DISPUTES

1   in November 2012 and has been meeting and conferring with defendants about this issue

2   since that time.  Defendants oppose the request on the basis that, at a hearing held on

3   October 31, 2012, plaintiff answered in the affirmative Judge Hamilton's question of

4   whether "the Secretary's action [is] brought solely on behalf of the 14 people that are

5   listed," and that defendants would be prejudiced by plaintiff's change of position.  Dkt.

6   Nos. 66 at 10:4-9; 139 at 5-6.  Plaintiff responds that the statement made to Judge Hamilton

7   was meant to clarify only that "at the time the complaint was filed, the 14 named employees

8   were the only ones for whom the Secretary was aware of being owed back wages."  Dkt.

9   No. 139 at n.1.  It appears that the statement was made during arguments regarding the

10  informant's privilege and the immigration status issues, and was thus not intended to

11  address the overall scope of discovery.  *See* Dkt. No. 66 at 2-3.  In light of that, plus the fact

12  that plaintiff requested the discovery many months ago, and that defendants have not shown

13  prejudice, the Court finds that discovery is not limited per se to the fourteen individuals

14  identified in the complaint.  This does not mean, however, that plaintiff is entitled to

15  unlimited discovery as to all Seafood Peddler employees.

16          **(B)      Requests for defendants' tax returns and bank statements.**

17          Plaintiff contends that defendants should be compelled to produce tax returns or bank

18  statements for Seafood Peddler and the individual defendants.  Dkt. No. 139 at 2.  It is

19  unclear whether this request is limited in time.  Plaintiff argues that Seafood Peddler's tax

20  returns are relevant to Seafood Peddler's claim that the restaurant was forced to terminate

21  employees in July 2011 because business was slow.  *Id.*  With respect to the individual

22  defendants, plaintiff argues that their tax returns are relevant to the assertion that they are

23  independent contractors.  *Id.*  Defendants respond that tax returns do not provide monthly

24  financial data and disclosure will not show the alleged slowdown in July 2011.  *Id.* at 6.

25  Defendants suggest that if the Court were to order disclosure, the returns be submitted to the

26  Court for in camera review "for the sole purpose of determining whether the returns show

27  the individuals as employees of Seafood Peddler (i.e. whether W-2's are shown on the

28

Case No. 12-cv-00116 WHO (NC)
SECOND ORDER RE: DISCOVERY                    9
DISPUTES

1   returns." *Id.*

2   Under federal law, courts apply a two-part test to balance the need for discovery with

3   the public policy favoring confidentiality of tax returns.  The court must find (1) that the

4   returns are relevant to the subject matter of the action; and (2) that there is a compelling

5   need for the returns because the information contained therein is not otherwise readily

6   obtainable.  *Karnazes v. County of San Mateo*, No. 09-cv-0767 MMC (MEJ), 2010 WL

7   1910522, at *5 (N.D. Cal. May 11, 2010) (citations omitted).  The same test is applied to

8   determine whether a party should have to disclose other financial information, such as

9   financial statements.  *Id.*  In light of the limited relevance of the tax returns asserted by

10  plaintiff here, plaintiff's failure to show that the information cannot be obtained by less

11  intrusive means such as an interrogatory or deposition, or that the information is likely to be

12  gleaned from the requested tax returns, the Court finds that plaintiff has not justified the

13  need for the production of tax returns or bank statements.  This request is therefore denied.

14  **(C)    Requests for information and records relating to purveyors and suppliers.**

15  Plaintiff seeks to compel defendants to produce "records relating to purveyors and

16  suppliers" on the ground that such records are relevant to "ascertaining the identity of

17  employees, their hours and days worked, and the restaurant's business volume and sales."

18  Dkt. No. 139 at 2.  The Court agrees with defendants that plaintiff has not demonstrated

19  why the records regarding the suppliers of the restaurant would show any of this

20  information.  *Id.* at 7.  It is also unclear why this information is necessary in light of the

21  discovery already obtained by plaintiff from defendants to date.  Accordingly, plaintiff's

22  motion to compel "records relating to purveyors and suppliers" is denied.

23  **(D)    Requests for additional time/sales records.**

24  The letter brief states that plaintiff has requested Kronos time/sales records, which are

25  records of individual food orders of restaurant customers for preparation by kitchen staff,

26  which purportedly show exact hours of daily food service, employees' time and attendance,

27  and restaurant sales.  Dkt. No. 139 at 3.  The letter brief further asserts that "Defendants

28

Case No. 12-cv-00116 WHO (NC)
SECOND ORDER RE: DISCOVERY          10
DISPUTES

1  have failed to state whether such documents exist, whether they will be produced, or

2  whether any attempt has been made to determine if they exist." *Id.*  It appears that this issue

3  is not ripe for resolution by the Court.  The parties have until September 24, 2013, to

4  complete the meet and confer process and submit a joint letter to the Court for resolution if

5  agreement is not reached.

6        **(E)       Requests for the work plans about which Fidel Chacon testified at
              deposition.**

7

8        Plaintiff contends that defendants agreed to produce, without objection, all work plans

9  that defendant Fidel Chacon testified about during deposition, and that defendants have not

10 produced those documents or stated whether any attempt has been made to locate and

11 produce them. Dkt. No. 139 at 3.  It appears that this issue is not ripe for resolution by the

12 Court.  The parties have until September 24, 2013, to complete the meet and confer process

13 and submit a joint letter to the Court for resolution if agreement is not reached.

14       3.       ADDITIONAL DISCOVERY ISSUES RAISED BY DEFENDANTS.

15       **(A)    Indirect immigration status questions.**

16       Defendants assert that plaintiff "continues to instruct witnesses not answer questions

17 which indirectly relate to immigrations status," such as questions regarding their aliases,

18 place of birth, social security number, prior places of employment and/or residences.  Dkt.

19 No. 139 at 5.  In support of this assertion, defendants have cited only to excerpts from the

20 deposition transcript of Hector Hernandez. Dkt. No. 140 at 5-7.  Defendants contend that

21 plaintiff's objections to such indirect questions are improper because "Judge Hamilton has

22 ruled that the only question that defendants may not ask is what that witnesses [sic]

23 'immigration status is.'" Dkt. No. 139 at 5.  First, the Court disagrees with this

24 interpretation of Judge Hamilton's March 29 order.  While Judge Hamilton overruled

25 plaintiff's objection to indirect questions which may have some bearing on immigration

26 status, she did not hold that *all* such questions were permissible. Dkt. No. 92 at 3:9-12.  At

27 the October 31, 2012, hearing, Judge Hamilton explained that "questions that don't go

28

1  directly to what [the witnesses'] immigration status is *but go to other issues that are*

2  *relevant in this case* are permissible." Dkt. No. 66 at 26:9-11 (emphasis added).  For

3  example, Judge Hamilton explained that the question of aliases "would be an appropriate

4  question with regard to people who are specifically listed as having been [Seafood Peddler]

5  former employees for whom you have no record," not that such a question was always

6  appropriate. *Id.* at 27:14-19.  Second, defendants have not provided adequate justification

7  to compel answers by Hernandez (or any other witness) to the indirect immigration status

8  questions asked at his deposition as they have not explained why those questions are

9  relevant to an issue in this case, and not simply an end-run around the prohibition against

10  direct immigration status questions.  Defendants' present request to compel answers to

11  indirect immigration status questions is denied.

12       **(B)     Addresses for the 14 named employees.**

13       By September 24, 2013, plaintiff must either comply with Judge Hamilton's order to

14  provide this information to defendants, provide a statement to defendants that plaintiff has

15  no such information, or face sanctions for failure to follow court orders.  *See* Dkt. Nos. 90 at

16  48; 92 at 2:24-26.

17       **(C)     Dispute regarding discovery of electronic data.**

18       The letter brief indicates that the parties are continuing to meet and confer on this

19  issue. Dkt. No. 139 at 6.  The parties have until September 24, 2013, to complete the meet

20  and confer process and submit a joint letter to the Court for resolution if agreement is not

21  reached.

22       **(D)     The deposition of Victor Viera.**

23
24       The letter brief states that the parties have agreed to continue to meet and confer on

   this issue with the hope that it can be resolved informally.  Dkt. No. 139 at 6.  The parties
25
   have until September 24, 2013, to complete the meet and confer process and submit a joint
26
   letter to the Court for resolution if no agreement is reached.
27
   //
28

1    4.    CONCLUSION.

2        With respect to the issues identified above as not ripe for resolution, if the parties are

3    unable to resolve their outstanding disputes and decide to present their disputes to the Court,

4    they must do so in a single joint letter brief not exceeding 5 pages.

5        Any party may object to this nondispositive pretrial order within 14 days of the filing

6    date of this order.  *See* Civ. L.R. 72-2.

7        IT IS SO ORDERED.

8        Date: September 10, 2013        _____

9                          Nathanael M. Cousins
                            United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 12-cv-00116 WHO (NC)
SECOND ORDER RE: DISCOVERY        13
DISPUTES