UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SEAFOOD PEDDLER OF SAN RAFAEL, INC., et al.,<br><br>　　　　Defendants. | Case No. 12-cv-00116-WHO<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTIONS** *IN LIMINE*<br><br>Re: Dkt. Nos. 233, 234, 235, 236, 306, 349 |

　　　　This is a case where almost every material fact is in dispute and yet the defendants filed a motion for partial summary judgment. Plaintiff Thomas E. Perez, Secretary of the United States Department of Labor, alleges that defendants Seafood Peddler of San Rafael, Inc., Richard Mayfield, Alphonse Silvestri, and Fidel Chacon failed to pay their kitchen employees overtime compensation; failed to make and maintain complete and accurate wage and hour records; and retaliated against employees for cooperating with the Secretary during his investigation of those alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* The defendants deny the Secretary's allegations.

　　　　The defendants filed a motion *in limine* to exclude the testimony of eight of their former employees, testimony that the defendants admit contradicts their defenses, on the ground that the employees asserted their Fifth Amendment privilege against self-incrimination in response to subpoenas for and deposition questions about their income tax returns. If that motion is granted, the defendants reason, there will be no evidence to support the Secretary's theory of the case with respect to the eight employees.[1] Thus, the defendants seek partial summary judgment on the

---

[1] Those employees are Hector Hernandez, Sergio Mejia, Alejandro Perez, Luis Sandoval, Esau Santos, Juan Tizol, Noel Viera, and Victor Viera.

1  claims related to those employees.

2  The subpoenas and questions that drew the assertion of the Fifth Amendment privilege seek information that is tangential to the causes of action at issue and, for that reason, I will not exclude the testimony of the employees. Their testimony raises substantial issues of material fact that a jury must resolve. I heard argument on June 18, 2014, and now DENY both motions.[2]

## FACTUAL BACKGROUND

In reciting the contested factual background below, I include facts drawn from the testimony of the eight employees that are relevant to both motions. Following this section, I turn to the motions *in limine* and discuss the subpoenas and questions that led the employees to invoke their Fifth Amendment rights. I then conclude with a discussion of the related summary judgment motion.

Seafood Peddler was a restaurant that could seat approximately 350 people in its main dining area and approximately 215 people at an adjacent banquet room. Mayfield Tr. 23:9-24:21. It was open every day of the year except Christmas, from 11:30 a.m. until 9:30 p.m. on Sunday

---

[2] On May 30, 2014, the defendants moved for leave to file three-days late documents in support of their reply brief to their motions *in limine*, which was due on May 27, 2014. Dkt. No. 306. There is little justification for granting this motion. The defendants could have filed their request before or on the date their reply brief was due, or sought a stipulation for an extension with the Secretary, but they did not do so.

The defendants knew since April 21, 2014, when they filed their motions that their reply would be due May 12, 2014. Based on a request from the Secretary, I granted an extension for the reply brief to May 19, 2014. Dkt. No. 272. Based on the parties' stipulation, I granted another extension for the reply brief to May 27, 2014. Dkt. No. 286. Yet they still failed to meet the deadline.

None of the "reasons for the late filings" offered by defense counsel—such as that his printer broke or that his "hand-held dictating machine" "gave out"—excuse his failure to comply with court deadlines. Nor does it matter that he is "a solo practitioner with two associates," one of whom "was unable to work each weekend, and the three-day Memorial Day holiday weekend as well."

This case has been mired by too many distractions throughout its course. In the interest of reaching the merits of this case, I will allow the late-filed materials to be considered and the motion is GRANTED.

On May 30, 2014, under Civil Local Rule 7-3(d)(1), the Secretary filed objections to reply evidence submitted by the defendants. Dkt. No. 305. On June 5, 2014, the defendants moved for leave to file a response to the Secretary's objections. Dkt. No. 349. The motion is DENIED. I will only consider admissible evidence and appropriate argument.

2

1    through Thursday, and 11:30 a.m. until 10:30 p.m. on Friday and Saturday. Chacon Tr. 44:7-22;
2    Mayfield Tr. 47:8-20; Def. Admis. No. 59. Employees started working as early as 10:00 a.m. and
3    worked until about 10:00 p.m. Chacon Tr. 60:13-22. The kitchen, which was 4000 square feet,
4    had six stations: a sauté station, a fryer, a grill, a pantry for dessert and salad making, a prep area,
5    and a dishwashing area. 30(b)(6) Tr. 48:1; Chacon Tr. 55:21-56:22; Mayfield Tr. 33:5-34:16,
6    101:2-21, 103:3-8. On a typical Friday or Saturday evening, the restaurant would have one or two
7    employees at each food preparation station, an employee who worked as a prep cook, and one to
8    three employees to wash dishes. Mayfield Tr. 101:2-21; Viera Decl. ¶ 6.

9        According to the employees, kitchen employees consistently worked over 40 hours per
10   week, averaging 61 weekly hours. Santos Tr. at 63:1-15; Hernandez Tr. 43:3-16, 80:23-81:19;
11   Noel Viera Tr. 62:12-63:5; Meija Tr. 37:25-38:8, 39:23-40:7; Viera Decl. ¶ 3; Castillo Decl. ¶ 4;
12   Eastwood Decl. ¶¶ 4-5. Kitchen employees have testified that head chef Chacon set their work
13   schedules and posted in the kitchen a written weekly schedule listing their hours. Sandoval Tr.
14   36:14-38:5, 157:19-158:8; Noel Viera Tr. 144:4-147:6, 172:6-173:4, 176:19-179:1; Viera Decl.
15   ¶ 5. A photograph of one of these schedules taken by a kitchen employee shows that employees
16   were often scheduled for more than 40 hours of work per week. Viera Decl. Ex. B. The
17   defendants deny these facts.

18       Certain employees testified that during their employment, Seafood Peddler kept timecards
19   which accurately reflected their hours worked, but that these accurate timecards were not the
20   timecards the defendants produced in this litigation and showed to the employees during their
21   depositions. Perez Tr. 31:12-32:18, 56:10-60:21; Santos Tr. 105:20-106:25; Tizol Tr. 43:8-45:11,
22   46:10-15, 48:15-17; Meija Tr. 26:8-30:5, 32:2-36:3; Hernandez Tr. 217:11-219:3; Sandoval Tr.
23   33:13-34:7, 34:23-36:13; Noel Viera Tr. 69:1-74:6, 76:5-81:5. At least three employees kept their
24   own written records of the hours they worked. Santos Tr. 100:12-102:1; Hernandez Tr. 27:18-
25   28:11; Sandoval Tr. 46:17-25.

26       Seafood Peddler paid kitchen employees every two weeks. Santos Tr. 69:12-15. Every
27   pay day, each kitchen employee received an envelope containing his pay in either a combination
28   of cash and check or all cash. Perez Tr. 61:3-16; Santos Tr. 104:11-20, 70:23-25, 78:20-80:6,

102:18-103:18, 108:20-110:5; Hernandez Tr. at 26:3-27:17; Tizol Tr. 52:22-55:13; Sandoval Tr. 32:14-33:5, 45:16-46:1, 46:17-21; Viera Decl. ¶ 3. The pay generally covered all of the employees' hours, but the restaurant paid all hours worked at a flat rate. Viera Decl. ¶¶ 3-4; Castillo Decl. ¶ 4; Paxtor Decl. ¶ 4; Eastwood Decl. ¶¶ 2-4; Santos Tr. 162:10-163:1; Hernandez Tr. 238:20-239:5, 250:24-251:9; Sandoval Tr. 22:1-23:1, 26:21-27:2, 30:24-31:7, 42:20-24; Meija Tr. 36:4-37:7, 64:5-66:19. Employees testified that Seafood Peddler never paid kitchen employees an overtime premium for work that exceeded 40 hours in a week. *See, e.g.*, Santos Tr. 63:1-15, 162:10-163:1; Sandoval Tr. at 42:20-24. Seafood Peddler's records reflect that it did not pay its employees an overtime premium, and the defendants deny the employees' claims. *See* Silvestri Decl. (Dkt. No. 242) ¶ 23; Eastwood Decl. ¶ 8.

While employers are required by federal law to maintain records of the wages and hours worked by certain employees, Seafood Peddler's records are incomplete and missing. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; Def. Admis. No. 45; 30(b)(6) Tr. 66:12-15, 85:15-86:7; Silvestri Decl. (Dkt. No. 242), ¶ 14; Darling Decl. ¶ 4. For the three years at issue in this case, Seafood Peddler produced records for eight months only. Darling Decl. ¶ 4. Many of these timecards are undated, and Seafood Peddler does not know what the actual dates for the timecards are. 30(b)(6) Tr. 141:1-143:12, 145:17-24, 147:10-23, 158:7-159:21; Silvestri Tr. 20:13-15, 26:16-22. The restaurant admits that the remaining time records are lost. Silvestri Decl. (Dkt. No. 242) ¶ 14; Def. Admis. No. 45.

Noel Viera, who Seafood Peddler placed in charge of filling out kitchen employees' timecards when Chacon was not present, testified that the time cards with his name that the defendants produced were fabrications because, in addition to not reflecting the hours he actually worked, they were written by somebody else. Noel Viera Tr. 69:1-74:6, 76:5-81:5; Def. Admis. No. 46. Viera had the authority to fill out and initial his own timecards when Chacon was not present to do it for him. Noel Viera Tr. 69:1-74:6, 76:5-81:5; Silvestri Decl. (Dkt. No. 242) ¶ 13; Def. Admis. No. 46.

While Seafood Peddler did not keep contemporaneous records of employees' daily or weekly work hours, the defendants claim that general manager Mayfield tallied employees' hours

4

worked from their two weekly timecards for each pay period and wrote their total hours on certification sheets. 30(b)(6) Tr. 61:20-62:4; Mayfield Tr. 78:23-81:8, 83:11-84:3, 86:25-87:14, 119:20-120:6. Seafood Peddler claims that it then gave checks to employees and created its payroll register based on the hours listed on those certifications. 30(b)(6) Tr. 61:20-63:3, 67:7-18, 91:17-92:24.

Employees testified that the certifications, like the timecards, did not accurately reflect the hours they worked each pay period: the hours listed only represent the hours for which Seafood Peddler paid by check each pay period, which was a fraction of the hours they actually worked. Santos Tr. 72:5-76:2; Hernandez Tr. 239:2-5; Noel Viera Tr. 59:6-63:5; Meija Tr. 77:5-80:5. Employees also testified that when they received their pay, they did not sign anything. Santos Tr. 72:5-76:2; Hernandez Tr. 28:21-29:3; Sandoval Tr. 26:12-14, 153:7-154:4; Meija Tr. 30:7-32:1. Several employees testified that at some point during their employment at Seafood Peddler, Chacon instructed them to sign stacks of papers which were written in English even though the employees (who are generally Spanish speakers) did not fully understand them; the employees signed the documents nonetheless. Santos Tr. 85:21-88:22; Sandoval Tr. 24:20-26:8, 26:21-27:2, 153:7-155:5; Noel Viera Tr. 16:9-28:25; Meija Tr. 67:16-71:4. One employee testified that Chacon told him and his kitchen co-workers to sign these papers shortly before Seafood Peddler closed in January 2012, which was after the Secretary began his investigation of Seafood Peddler's alleged violations. Noel Viera Tr. 16:20-27:24.

Employees also testified that Seafood Peddler's pay records—the actual paychecks and payroll registers listing the check amounts—only reflected the amounts they were paid in check each pay period, not the true amount of their pay. Hernandez Tr. 247:18-248:17; Noel Viera Tr. 33:7-16, 34:1-36:2; Perez Tr. 54:2-13; Santos Tr. 71:4-19, 73:16-76:2; Mejia Tr. 36:4-37:7. They testified that they received large portions of their pay in cash. Hernandez Tr. 247:18-248:17; Noel Viera Tr. 33:7-16, 34:1-36:2; Perez Tr. 54:2-13; Santos Tr. 71:4-19, 73:16-76:2; Mejia Tr. 36:4-37:7. Neither the payroll nor the checks themselves reflect any cash payments to kitchen employees and the defendants deny that Seafood Peddler ever made any such payments. 30(b)(6) Tr. 75:25-76:5; Eastwood Decl. ¶ 8.

1    Nearly all the timecards produced by the defendants are undated, but the defendants
2    produced the timecards with handwritten cover sheets allegedly linking the timecards to particular
3    pay periods. Darling Decl. ¶ 4. However, the timecards for at least one pay period show that the
4    employees worked substantial overtime. *See generally* 30(b)(6) Tr. 129-56. But the
5    corresponding certifications and payroll register for the same pay period either show that the
6    employees worked fewer or no overtime hours, or do not list the employees at all. *Id.* Similarly,
7    the timecards conflict with Seafood Peddler's sales records. Opp'n 10 (citations omitted). When
8    asked to explain these contradictions, Seafood Peddler and its president, Alphonse Silvestri,
9    disavowed them. 30(b)(6) Tr. 141:1-143:12, 145:17-24, 147:10-23, 158:7-159:21; Silvestri Tr.
10   20:13-15, 26:16-22.

**MOTIONS *IN LIMINE***

**I.    ASSERTION OF THE FIFTH AMENDMENT PRIVILEGE**

13   During the course of this action, Seafood Peddler subpoenaed the tax returns and W-2
14   forms of eight former Seafood Peddler employees when their depositions were noticed. MIL Br.
15   (Dkt. No. 234) 6. The eight are part of a group of 14 former employees named in the Complaint.
16   The subpoenas allowed redactions "except for items related to the issue of 'wages.'" MIL Br. 6.
17   During their depositions, defense counsel asked the deponents whether they had brought their tax
18   returns with them; counsel also asked whether they had obtained or solicited U-Visas in exchange
19   for assisting the Secretary during this action, as the defendants speculate they did. MIL Br. 6-7.
20   Each of the deponents invoked their Fifth Amendment privilege in response to the subpoena for,
21   and questions about, tax returns as well as questions about U-Visas.
22   The defendants contend that if the deponents' wages on their tax returns exceed the amount
23   on the W-2 forms provided by Seafood Peddler, then the Secretary's allegations that employees
24   were paid in cash for their overtime would be confirmed. MIL Br. 7. However, if the deponents'
25   tax returns did not show cash income, "a contradiction would arise that would be very difficult for
26   the Secretary to resolve" because the deponents would be "tax cheats." MIL Br. 7-8. Because the
27   deponents invoked the Fifth Amendment, the defendants argue that I should exclude their
28   testimony about any cash payments made by the defendants and draw an adverse inference that no

United States District Court
Northern District of California

cash payments were made.

The defendants then argue that if the testimony of the deponents is excluded, a document the defendants call the "Eastwood Report," that allegedly "reflects no direct evidence other than statements made by the eight Deponent witnesses that the Employer paid these Employees their wages in cash," should be excluded as well. MIL Br. 20.

The Secretary argues that exclusion and any adverse inference are permitted only with respect to the specific subject matter of the question the party refused to answer and only where there is independent evidence of the fact asked to be inferred: here, any adverse inference would relate only to whether the deponents filed income taxes, not whether they received cash wages. MIL Opp'n (Dkt. No. 284) 2.

## II. LEGAL STANDARD

"[T]he Fifth Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). "However, in the civil context, the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Id.* "The only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right." *Id.* Accordingly, "the assertion of the privilege necessarily attaches only to the question being asked and the information sought by that particular question." *Id.* at 1265.

"Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof." *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). "Moreover, a district court has discretion in its response to a party's invocation of the Fifth [Amendment]," including excluding evidence disputing the other party's evidence or supporting his own. *Id.*; *see also Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) (affirming district court's preclusion of defendant's testimony at trial based on defendant's earlier invocation of Fifth Amendment privilege during deposition).

7

"[N]o negative inference can be drawn against a civil litigant's assertion of his privilege against self-incrimination unless there is a substantial need for the information and there is not another less burdensome way of obtaining that information." *Glanzer*, 232 F.3d at 1265. "[A]n adverse inference can be drawn when silence is countered by *independent evidence* of the fact being questioned . . . ." *Id.* at 1264. "[W]hen there is no corroborating evidence to support the fact under inquiry, the proponent of the fact must come forward with evidence to support the allegation, otherwise no negative inference will be permitted." *Id.* "The district court must [also] determine whether the value of presenting the evidence is substantially outweighed by the danger of unfair prejudice to the party asserting the privilege." *Nationwide Life Ins.*, 541 F.3d at 912 (internal punctuation omitted).

## III. DISCUSSION

### A. Employees' Testimony

There is no basis for excluding the eight employees' testimony: whether they filed tax returns is irrelevant to this proceeding. All eight deponents invoked their Fifth Amendment privilege only in response to the defense counsel's very narrow question of whether or not they brought their tax returns with them to their depositions in compliance with the defendants' subpoenas. *See* Perez Tr. 37:20-39:16; Santos Tr. 16:10-17:22; Hernandez Tr. 195:3-199:10; Tizol Tr. 14:14-16:19; Sandoval Tr. 17:20-19:2; Noel Viera Tr. 96:2-100:8; Meija Tr. 15:23-16:5, 130:9-14; Victor Viera Tr. 10:12-11:7, 31:16-32:5. The defendants have pointed to no other instance in which the deponents refused to respond to a question or failed to produce subpoenaed materials. Defense counsel does not appear to have followed up on the deponents' privilege invocation with any other questions about their tax returns. On the other hand, seven of the eight deponents answered counsel's questions about cash payments, testimony that the defendants now seek to exclude.[3] *See* Perez Tr. 61:11-63:1; Santos Tr. 71:1-72:1, 73:16-76:2; Hernandez Tr. 23:7-25:18, 36:4-18, 238:20-239:5, 250:24-251:9; Tizol Tr. 49:9-51:4; Sandoval Tr. 22:1-23:1, 30:24-31:7; Noel Viera Tr. 107:1-108:11; Meija Tr. 36:4-37:7, 64:5-66:19.

---

[3] The defendants point to no evidence that the eighth deponent, Victor Viera, refused to answer questions about cash payments.

8

Any exclusion of testimony based on the deponents' refusal to answer counsel's questions is limited to the precise issues about which counsel asked. The deponents did not invoke the Fifth Amendment in response to questions about cash payments or hours worked. Because "the [Fifth Amendment] privilege necessarily attaches only to the question being asked and the information sought by that particular question," *Glanzer*, 232 F.3d at 1265, and the deponents only refused to say whether or not they brought their tax returns with them to the deposition, at most, only subsequent testimony that they filed or have tax returns would warrant preclusion. There is no ground for excluding testimony by the deponents about the hours that they worked or that they received payments in cash from the defendants on the basis that they should have filed tax returns and, if they did, that the income they reported would be dispositive regarding their credibility. The defendants' theory of relevance is speculative and tangential to the claims in this case.

Nor is there any reason to draw an adverse inference based on the deponents' invocation of their Fifth Amendment privilege. A court may allow an adverse inference if there is independent evidence of the fact at issue. *Glanzer*, 232 F.3d at 1264. The defendants ask for the inference that Seafood Peddler paid no cash to its employees.[4] MIL Br. 13-14. While the defendants claim that there is "ample independent evidence" supporting that conclusion, the "evidence" that they provide—such as that "[t]here is no evidence that the deponent witnesses deposited large sums, on pay days in which they received pay checks or otherwise, into their back accounts" or that the deponents "nearly always cashed their paychecks . . . at a retail check cashing facility," MIL Br. 14-15—hardly shows that the defendants made no cash payments to the deponents. Indeed, the defendants have not provided any evidence on the narrower, irrelevant subject that drew the assertions of the Fifth Amendment privilege: whether the deponents filed or have tax returns at all.[5] The inference the defendants seek to draw is unrelated to the invocations of the Fifth

---

[4] "[T]his case presents the unusual situation in which Defendants are seeking adverse inference instructions against [the Secretary] based on the invocation of the Fifth Amendment by a non-party witness . . . ." *Cotton v. City of Eureka*, No. 08-cv-4386-EDL, 2010 WL 2889498, at *4 (N.D. Cal. July 22, 2010). There does not appear to be any Ninth Circuit authority addressing whether a court can grant such a request, but I need not decide this issue because even if it was possible, the defendants have not met their burden to seek this relief.

[5] The defendants also fail to show any "substantial need" for information about the deponents' tax returns or that any probative value of the tax returns outweighs any unfair prejudice that may arise

9

Amendment privilege.[6]

Defendants argue that it is unfair to allow the employees to testify since they have no documents to support their testimony and refuse to answer questions about their tax returns. If their tax returns had a direct relation to the Secretary's causes of action, I might agree. Because they do not, the motion *in limine* to exclude the deponents' testimony on cash payments and to draw the adverse inference against the Secretary sought by the defendants is DENIED.

### B. "Eastwood Report"

As an initial matter, although the defendants ask that I exclude the "Eastwood Report," the defendants do not identify in their motion what the "Eastwood Report" is or where it can be found. The Secretary notes in his opposition brief that the "report" is presumably "an eight-page, incomplete spreadsheet titled 'Wage Transcription and Computation Sheet' prepared by Wage and Hour Investigator Michael Eastwood," which appears as Exhibit L to the Eytan Declaration, but which the declaration incorrectly identifies as Exhibit K. *See* MIL Opp'n 20; Dkt. Nos. 238, 255. The Secretary states that the spreadsheet is a Department of Labor investigator's draft computation of back wages owed to the 14 employees identified in the Complaint. MIL Opp'n 20-21 (citing Eastwood Decl. (Dkt. No. 284-4) ¶ 6, Ex. A).

This motion is premature given that the Secretary states that he does not intend to use this document as a trial exhibit or to rely on it to prove damages at trial. MIL Opp'n 21. But just as there is no basis to exclude the deponents' testimony about cash payments, there is no basis at this juncture for excluding the "Eastwood Report." The "report" consists of graphs filled with dollar amounts that appear to be calculations of wages owed. Eytan Decl. Ex. L (Dkt. No. 255). The

---

from presenting evidence about the returns.

[6] The employees' credibility will be central to this case. The personal interest each has in the Secretary's potential victory (such as payment of back wages) and the lack of documentation to support their testimony are valid subjects for exploration. But an attack based on the assertion of the Fifth Amendment privilege to questions about income tax returns or on the employees' immigration status would be more prejudicial than probative and will not be allowed at trial. Whether the deponents filed tax returns is not at issue in this case—whether they were paid for hours worked is. Whether the deponents have paperwork to support their testimony is not dispositive of any claim in this case—whether the defendants have the paperwork required by the Fair Labor Standards Act is. The trial in this case is not about the immigration status of the deponents; it is about the defendants' own compliance with the law.

1  mere fact that the deponents refused to answer the defense counsel's question about whether they brought their tax returns with them to their depositions does not merit exclusion from evidence of this document or the information in it.  Indeed, there is no apparent link between the document and the deponents other than the defendants' unsupported assertion that "the Eastwood Report relies almost entirely upon the unsupported statements of the Employees."  MIL Br. 20.  The information in the "report" is unrelated to the narrow issue about which the deponents refused to answer and therefore should not be excluded.

The motion *in limine* to exclude the "Eastwood Report" and information therein is DENIED.[7]

## MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the court "that there is an absence of evidence to support the non[-]moving party's case."  *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial."  *Id.* at 324 (quotation marks omitted).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."

---

[7] The defendants also move to exclude all statements made to any of the Secretary's representatives as hearsay.  MIL Br. 21.  But the defendants do not explain why such statements are hearsay and must be excluded—they provide no explanation at all.  At best, such a motion is premature.  The motion *in limine* to exclude all statements made to the Secretary's representatives as hearsay is DENIED.

11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "uncorroborated and self-serving" testimony that "flatly contradicts [ ] prior sworn statements" cannot create a genuine issue of fact. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

A district court need not consider evidence in the record "unless it is brought to the district court's attention" because the court is "not required to comb the record to find some reason" to grant or deny summary judgment; rather, "if a party wishes the court to consider [evidence for a particular issue], the party should bring that desire to the attention of the court." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation and internal punctuation omitted); *see also Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (stating that the court is not obligated "to scour the record in search of a genuine issue of triable fact").

**B.  DISCUSSION**

The defendants argue that "once the oral and affidavit testimony of one or all of the eight former Employees is set aside by an exclusion order, as requested in the accompanying *in limine* motion, the Secretary cannot meet [his] 'initial responsibility' to provide admissible evidence to create a genuine issue of material fact." Mot. 4-5. In particular, they contend that "the Secretary cannot sustain [his] burden because the claim [concerning] unpaid overtime fails if [there were] no cash payments, as alleged by the eight Deponents and by the Eastwood Report," because it would be "simply too improbable" to believe that the employees worked overtime for 12 years without having been paid overtime in cash. Mot. 5. But, the defendants state, "If defendants' *in limine* motion fails as to the central cash payment issue, so that the eight Deponent Employees may submit affidavit statements in opposition to this motion claiming in such affidavits that they

12

1  received large sums as cash payments, then this motion must fail too." Mot. 6.  Counsel for the
2  defendants reaffirmed this point at the hearing.

3  Because I am denying the defendants' motion *in limine*, as the defendants concede their partial motion for summary judgment fails.  There are a plethora of disputed material facts, some of which are: whether the defendants made cash payments to its employees; whether employees worked any overtime at all; whether the defendants' pay records are accurate; and whether Seafood Peddler even had sufficient cash on hand to support the alleged scheme.  Indeed, whether I granted the motion *in limine* or not, the defendants still would not have been able to carry their burden of showing "that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## CONCLUSION

I will not take the adverse inference requested by the defendants as a result of the assertion of the Fifth Amendment privilege by the eight employees, will not exclude their testimony, and instead DENY the defendants' motions *in limine.*  This case has multiple disputed issues of material fact.  The defendants' motion for partial summary judgment is also DENIED.

**IT IS SO ORDERED.**

Dated: June 20, 2014



WILLIAM H. ORRICK
United States District Judge