UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>SEAFOOD PEDDLER OF SAN RAFAEL, INC., et al.,<br><br>    Defendants. | Case No. 12-cv-00116-WHO<br><br>**ORDER ON PLAINTIFF'S MOTIONS *IN LIMINE***<br><br>Re: Dkt. Nos. 224, 297 |

    The defendants disclosed three experts: defendant Richard Mayfield, Seafood Peddler's general manager; defendant Alphonse Silvestri, its president; and Sandy Magid, its outside accountant. Mayfield & Silvestri *Daubert* Motion ("MSDM") Botts Decl. (Dkt. No. 224-1) ¶ 2, Ex. A (Dkt. No. 224-2 at 1-2). The Secretary moves under Federal Rule of Evidence 702 to exclude their testimony, arguing that they are not experts or have not met the requisites of Rule 702.

    Mayfield and Silvestri are not qualified under Rule 702 to testify as experts and the Secretary's motion is GRANTED. Magid has the necessary qualifications and may testify as an expert, but in a more circumscribed way than the defendants contemplate. The Secretary's motion as to him is GRANTED IN PART and DENIED IN PART.

**OVERVIEW**

    The Secretary contends that the defendants paid their kitchen employees the same wage for all hours worked rather than paying 1.5 times the regular wage for working more than 40 hours per week as required by law. To the extent that the defendants kept any accurate records (which the Secretary claims the defendants largely did not do), the Secretary alleges that the defendants underreported the hours worked by the kitchen employees, which were frequently in excess of 40

1  hours per week, and paid the employees by check for the reported hours and in cash for the
2  unreported hours. The Secretary also asserts that the defendants falsified certain wage and hour
3  records it produced during the course of his investigation and this litigation. The defendants deny
4  these allegations.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

"[T]he proponent [of the proposed expert] has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." FED. R. EVID. 702 advisory committee's note. The court has a "gatekeeping" role, "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "If evidence lacks either reliability or relevance, it must be excluded." *Cooper v. Brown*, 510 F.3d 870, 943 (9th Cir. 2007).

"[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue. The evidence must logically advance a material aspect of the party's case." *Id.* at 942 (citation omitted). With regard to reliability, "the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." FED. R. EVID. 702 advisory committee's note (citation omitted).

"The trial court must also act as a 'gatekeeper' to exclude 'junk science' that does not meet

1  Rule 702's reliability standards by making a preliminary determination that the expert's testimony
2  is reliable. Rule 702 demands that expert testimony relate to scientific, technical or other
3  specialized knowledge, which does not include unsubstantiated speculation and subjective
4  beliefs." *Cooper*, 510 F.3d at 942 (citation and brackets omitted). Importantly, "there must be a
5  recognized body of knowledge, learning or expertise upon which the witness relies. Where there
6  is no field of expertise, nobody will qualify as an expert witness on the subject." *In re Canvas*
7  *Specialty, Inc.*, 261 B.R. 12, 19 (Bankr. C.D. Cal. 2001) (citations omitted).

## DISCUSSION

### I. MAYFIELD

The defendants offer Mayfield as an expert on two topics: (i) "[m]ethods for keeping time records for employees in Seafood Peddler," "the processing of that information through production of payroll checks," recordkeeping practices, and "explanation of the recordkeeping system with reference to incongruities that may arise from wayward documentation"; and (ii) "[m]eans and methods for carrying out delegated duties by independent contractor personnel in Seafood Peddler and the significance thereof as to whether these contractors should be considered employees or independent contractors." MSDM Botts Decl. ¶ 2, Ex. A at 9. His expert disclosure does not include a statement of opinions on these issues.

The Secretary argues that most of Mayfield's proposed expert opinion is actually lay witness testimony because he will be giving evidence based on personal knowledge. In particular, Mayfield will be discussing Seafood Peddler's timekeeping, payroll, and recordkeeping practices. MSDM Br. (Dkt. No. 224) 4-5. The Secretary is concerned that Mayfield—as a defendant with a direct financial interest in the case—may improperly bolster what would otherwise be his lay testimony by holding himself out to be an expert, thereby causing prejudice and confusing the jury. MSDM Br. 5. The Secretary also argues that Mayfield's proposed testimony on the "duties [of] independent contractor personnel in Seafood Peddler and the significance thereof as to whether these contractors should be considered employees or independent contractors" is testimony about a legal conclusion, which a witness may not offer.

The defendants assert that Mayfield's proposed opinion about the "'methods' for keeping

1   time records for employees in Seafood Peddler" "is technical in nature." MSDM Opp'n (Dkt. No.
2   273) 8. That is because Mayfield will "describe the processing of that information" and will
3   "describe where records are kept." MSDM Opp'n 8. In addition, the defendants assert that
4   although Mayfield is a percipient witness, having him qualified as an expert would "simplify the
5   testimony that other Seafood Peddler employees might have to give" and avoid hearsay objections
6   "when Mayfield testifies as to information he has about the various systems that he obtained from
7   talking with other individuals in the organization." MSDM Opp'n 9. The defendants contend that
8   Mayfield is qualified to discuss whether an individual is an independent contractor or an employee
9   based on his understanding "from speaking with certified public accountants, labor law specialists
10  and the like." MSDM Opp'n 9-10. His opinion "would help make his testimony as a percipient
11  witness more understandable if he could go beyond the strict contours of his own activities."
12  MSDM Opp'n 10.
13       Mayfield may not offer expert testimony in this action. The topics for which the
14  defendants proffer Mayfield as an expert involve matters within his personal knowledge and
15  experience only. They are "not based on scientific, technical, or other specialized knowledge
16  within the scope of Rule 702." FED. R. EVID. 701(c). Mayfield can testify about how Seafood
17  Peddler maintains its records or manages people who work there based on his own experience and
18  observations without being qualified to give expert testimony. If relevant, the testimony that he
19  will give may be admitted under Rule 701 "not because of experience, training or specialized
20  knowledge within the realm of an expert, but because of the particularized knowledge that [he] has
21  by virtue of his [ ] position in the business." FED. R. EVID. 701 advisory committee's note. While
22  the defendants argue that Mayfield's proposed opinion about "methods" for timekeeping "is
23  technical in nature," MSDM Opp'n 8, Seafood Peddler's recordkeeping practices is "technical"
24  relative to Seafood Peddler only—the defendants do not contend that Mayfield is an expert in
25  accounting or human resources generally. Though the defendants baldly argue that qualifying
26  Mayfield would "simplify the testimony" by avoiding hearsay objections, this sort of end-run
27  around the rules of evidence is precisely what the rules of evidence are for.
28       While Mayfield may testify as a lay witness about his personal knowledge of Seafood

United States District Court
Northern District of California

Peddler's practices, he may not opine at all on whether anyone who has worked for Seafood Peddler is an employee or an independent contractor. "[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law," and "invade[ ] the province of the trial judge." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008). "Whether an employer-employee relationship existed under the FLSA is a question of law." *Hale v. State of Ariz.*, 967 F.2d 1356, 1360 (9th Cir. 1992). Mayfield may testify about any facts within his personal knowledge under Federal Rule of Evidence 701, but he may not offer legal opinions. That is the Court's responsibility.

The motion to exclude Mayfield's proposed expert testimony is GRANTED.

## II. SILVESTRI

The defendants offer Silvestri as an expert on two topics. First, he would testify about "[t]he practice of Seafood Peddler as well as the practice in similarly-organized restaurants in northern California concerning the hiring of kitchen personnel (with emphasis on wage rates, willingness to hire non-citizen employees on a full-time and potential overtime pay basis), and economic considerations pertaining to these decisions." Silvestri claims that the bases for his opinions are his "long history in operating restaurants, especially in California; discussions [he has] had with other restaurant operators in northern California; and [his] understanding of the economics of the restaurant business." Second, he would testify about "[t]he organization and maintenance of an efficient restaurant kitchen facility committed to serving quality seafood to numbers of restaurant patrons in a sit-down restaurant setting," including "whether there are separate 'stations' in the kitchen for specialty functions (griller, pantry, fryer, dish washing machine, and the like)" and the juggling, hiring and staffing patterns both in the Seafood Peddler restaurant and in similar restaurant establishments." Silvestri claims that the bases for these opinions are his "direct knowledge, as well as discussions with other restaurant operators of similar restaurants." MSDM Botts Decl. ¶ 2, Ex. A at 8. As with Mayfield, Silvestri's expert disclosure does not include a statement of opinions on these issues.

The Secretary argues that the defendants fail to show that Silvestri's opinion is either relevant or reliable. First, his anecdotal impression of how other restaurants organize their

kitchens has nothing to do with how many hours Seafood Peddler's kitchen employees work or how much they were paid. MSDM Reply (Dkt. No. 283) 2. Secondly, his opinions are not "reliable" because, while an expert may be qualified based on experience, his opinion must be based on "intellectual rigor" and sound methodology. MSDM Reply 3 (citing *Kumho Tire*, 526 U.S. at 152, and *Daubert*, 43 F.3d at 1318). However, Silvestri will only make "mere generalizations based on limited personal experience." MSDM Reply 3.

      The defendants argue that Silvestri is "qualified by experience" to give an opinion about the "general practice in the restaurant business both as to the operation of the kitchen line as well as to the economic factors that guide restaurant owners in hiring kitchen personnel (and avoiding overtime)." MSDM Opp'n 3. His opinion is reliable, they say, because of his three-decade experience in the restaurant business. The defendants assert that Silvestri will rebut statements by confidential informant witnesses that each employee in Seafood Peddler's kitchen had only one designated task by his knowledge that "the economics of running the restaurant would not support such specialization." MSDM Opp'n 5-6. "He will explain in detail, at trial, how the line operates and why it is economically not feasible to have a kitchen employee (at or near minimum wage) just limit his activities to one narrow kitchen function . . . ." MSDM Opp'n 6. In particular, the defendants claim that it would be helpful for the jury to hear Silvestri's testimony about the fact that it would be "financially ruinous" for a restaurant in Marin County to pay employees overtime. MSDM Opp'n 7, 7 n.3.

      Silvestri may not offer expert testimony in this action. He may testify as a lay witness about his personal knowledge of Seafood Peddler and its practices. But what other restaurants in northern California or elsewhere do is immaterial to the central issues. This action is ultimately about whether Seafood Peddler kept legally required records, failed to pay its workers overtime wages they were due, and wrongfully retaliated against them for assisting the Secretary's investigation. The jury does not need an expert to tell them about "the practice in similarly-organized restaurants" or "[t]he organization and maintenance of an efficient restaurant kitchen facility"—it only needs to know how many hours the Seafood Peddler workers worked and whether they were paid for it, whether the defendants kept their books and records in accordance

1  with the Fair Labor Standards Act, and whether the defendants retaliated against them for
2  reporting any violations. The practices of other restaurants may provide some context for the
3  operations at the Seafood Peddler, and on a question by question basis Silvestri's lay opinion on
4  those issues based on his experience in the restaurant industry may be admissible. But those
5  practices are irrelevant to the Secretary's allegations about how many hours the employees worked
6  and whether the Seafood Peddler paid off-the-books what the Secretary claims Seafood Peddler
7  did. The pertinent evidence depends solely on the facts particular to Seafood Peddler and its
8  finances only. Silvestri's proposed expert testimony would not "help the trier of fact to
9  understand the evidence or to determine a fact in issue" and he therefore fails to qualify as an
10 expert. FED. R. EVID. 702(a); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591
11 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo,
12 non-helpful.").[1]

13 The motion to exclude Silvestri's proposed expert testimony is GRANTED.

### III. MAGID

15 The defendants offer Sandy Magid, Seafood Peddler's accountant, as an expert witness.
16 Magid received a bachelor of science degree in finance and accounting from California State
17 University, Northridge, and appears to have been an accountant since at least 1977. He is a
18 certified public accountant with experience giving tax and financial accounting advice. He
19 previously taught accounting and finance courses at the City College of San Francisco. Magid
20 *Daubert* Motion ("MDM") Botts Decl. Ex. A (Dkt. No. 297-2).

21 The defendants offer Magid as an expert on two issues. First, he would testify about
22 whether "it is (or was) rational as a business and tax matter, for Seafood Peddler to have paid
23 kitchen employees . . . in cash sums rather than paying them by pay check, and, if it had made the
24 cash payments whether there would have been any benefit to Seafood Peddler in doing so."
25 Second, he would testify about whether there is "any evidence that Seafood Peddler in fact made

---

[1] Needless to say, the defendants fail to show that Silvestri's proposed testimony is reliable: Silvestri's expert disclosure does not say what his proposed testimony will be nor explain the bases for any opinions he might offer about the restaurant industry.

7

cash payments to any of the 14 identified by name kitchen employees in its San Rafael facility for a time period between 2009-2011." Magid's opinion on the first issue is that "it would have been irrational as both a tax and business matter to make the payments in any degree put forward by the DOL, especially in the report prepared by its investigator, Michael Eastwood." Magid's opinion on the second issue is that "Seafood Peddler's records do not support the DOL's conclusion concerning cash payments to employees." MDM Botts Decl. Ex. A.

Magid was Seafood Peddler's accountant and has been a personal accountant for Silvestri and Mayfield for many years. Magid Tr. (Dkt. No. 297-3) 34:4-36:19. He prepared a one-and-a-half page report. MDM Botts Decl. ¶ 3. He has testified as an expert in state court and federal administrative proceedings, though never in federal court. Magid Tr. 89:19-92:3. He did not review any documents or records in preparing his report, though he is familiar with Seafood Peddler's records as a result of his work over the years for Seafood Peddler and he reviewed Seafood Peddler's point-of-sale records before his first deposition in this case. Magid Tr. 68:9-73:13. He performed no analysis to conclude that Seafood Peddler would have derived no benefit from paying the employees in unreported cash. Magid Tr. 38:6-42:8, 61:4-62:23. With regard to the cash issue, the only calculation Magid performed was a "[v]ery simple" calculation he performed by hand in which he "[t]ook the hours purported to be worked by these employees . . . per week . . . . Multiplied it by 52. Multiplied by 14 employees. Multiplied by 3 years." Magid Tr. 21:3-9, 76:17-79:1. Magid bases his belief about the availability of Seafood Peddler's cash on his assumption that all of Seafood Peddler's sales were recorded and that any cash paid to employees would have had to come from cash sales, though he never reviewed the point-of-sales records to verify his assumptions. Magid Tr. 29:16-30:2, 58:6-15, 62:24-68:8, 101:2-11. Throughout his deposition testimony, Magid asserted that his conclusions are derived from his long-time familiarity with Seafood Peddler as a client.

The Secretary seeks to exclude Magid's testimony because he has "conducted no study, reviewed no documents, and used no professional expertise or experience beyond the preparation of Defendants' tax returns in reaching his opinion, instead grounding his opinion in his character assessment of Defendants, his long-time clients." MDM Br. (Dkt. No. 297) 1. The Secretary

8

asserts that, "[a]t its core, Magid's opinion is an expression of his personal belief in the honesty of his clients, rather than an assessment of any actual facts or data." MDM Br. 5. "By choosing not to review any data, he failed wholly to use his area of expertise—which the Secretary presumes lies in the area of accounting—to calculate, weigh, or even consider the economic consequences of the various factual scenarios upon which he opines." MDM Br. 6. The Secretary states that the "best example of [Magid's] decision to eschew application of accounting principles" is in his admission that in concluding that it would not make business sense to fail to report cash wages and therefore be unable to claim a tax deduction, Magid did not consider the benefit of avoiding payroll taxes that Seafood Peddler otherwise would have had to pay. MDM Br. 6 (citing Magid Tr. 38:10-42:8, 61:22-62:23). Accordingly, his conclusion is flawed because he only looked at the tax costs of paying workers in cash, not the tax benefits. MDM Br. 6. With regard to his conclusion that Seafood Peddler lacked cash sales necessary to fund the alleged scheme, the Secretary points out that Magid did not look at any documents or apply any specialized methodology in reaching his opinion. MDM. Br. 7. The Secretary also moves to exclude Magid's opinion under Federal Rule of Evidence 403 because the Secretary argues that the opinion will confuse the issues and mislead the jury. MDM Br. 10.

The defendants claim that "Magid has gained specialized knowledge of the tax implications of reporting income and not reporting under-the- table cash payments," as well as "extensive knowledge of the controls and procedures Seafood Peddler uses to ensure that all income is reported properly." MDM Opp'n (Dkt. No. 345) 5-6. They argue that his opinion "is based on specific facts and data" and "is the product of application of reliable principles and methodology." MDM Opp'n 6-7.

The Secretary's arguments have some force, but all of their cricisms may be explored on cross-examination. As a certified public accountant, Magid has expertise on the tax consequences of paying reported wages as opposed to paying employees off-the-books. He has been an accountant for about four decades. He has studied and taught finance and accounting, and his curriculum vitae reflects that he has significant experience dealing with tax issues. These are specialized areas of knowledge, which the Secretary does not dispute, and Magid's testimony on

this topic appears to be relevant to the issues in this case. In particular, Magid has attempted to explain that failing to report certain wages forgoes the ability to claim them as expenses, and the amount of taxes that must be paid may be altered depending on the applicable tax bracket. As a certified public accountant, Magid should be familiar with the rules governing taxation and may opine about the benefits and drawbacks of various tax strategies. While his expert report is conclusory and his deposition testimony is not unassailable, he may be challenged through cross-examination. But exclusion on this record is inappropriate.

Magid may not, however, testify about what is or is not "rational." The defendants have provided no evidence that "rational" or "irrational" are terms with specific meaning within Magid's expertise. These appear to be little more than value-laden words that are more likely to confuse than assist the jury. However, Magid may contrast the benefits and drawbacks of taking the particular approaches suggested by the parties' theories and say which one he would advise his client to follow.

One of Seafood Peddler's defenses is that it lacked sufficient cash to support the scheme that the Secretary alleges occurred. As Seafood Peddler's long-time accountant, Magid can testify concerning the accounting system and controls in place at Seafood Peddler, and render an opinion based on proper assumptions and using reliable methods about whether Seafood Peddler would have had enough cash to pay the employees what the Secretary alleges. Those assumptions and methods may be challenged on cross-examination. He did not perform an independent forensic audit and may not testify that there is "no evidence of cash payments" or draw other factual conclusions that are within the jury's province.

The motion to exclude Magid's proposed expert testimony is GRANTED IN PART and DENIED IN PART.

## CONCLUSION

The precise contours of admissible testimony and examination at trial cannot be determined on these motions. But the primary issues they raise are clear enough. The Secretary's motions to exclude the proposed expert testimony of Mayfield and Silvestri are GRANTED. The Secretary's motion to exclude Magid's proposed expert testimony is GRANTED IN PART and

1  DENIED IN PART: Magid may only testify as an expert about the tax consequences of pursuing
2  certain tax strategies, but he may not testify as an expert about what strategies are "rational" or
3  "irrational"—or other similar terms. He may testify as an expert about whether Seafood Peddler
4  had sufficient cash to support the scheme the Secretary alleges based on the records of the Seafood
5  Peddler as long as he uses reliable methods and principles in forming his opinion and the
6  assumptions on which he bases his opinion have an evidentiary basis.

**IT IS SO ORDERED.**

Dated: June 20, 2014



WILLIAM H. ORRICK
United States District Judge