UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>SEAFOOD PEDDLER OF SAN RAFAEL, INC., et al.,<br><br>    Defendants. | Case No. 12-cv-00116-WHO<br><br>**ORDER RE SUPPLEMENTAL PRETRIAL CONFERENCES** |

This Order summarizes some of the important rulings that I made at the supplemental pretrial hearings held on August 19, 2014 and August 21, 2014.

The Secretary has repeatedly argued that all information concerning its witnesses' immigration statuses, particularly those that are undocumented and have applied for a "U" visa, is confidential and should be excluded from the trial. While there are circumstances where such a blanket rule may be appropriate, it is obvious in this case that the immigration status of the witnesses is interwoven into the factual context of this case including, among other things, the Secretary's retaliation claim. Moreover, the defendants have the right to explore on cross-examination whether the interest of the witnesses in obtaining a visa to work in this country has affected the credibility of their testimony. Accordingly, I have made the following rulings in an effort to find an appropriate balance between those conflicting concerns:

   **1. Instruction Regarding Immigration Benefits**

As discussed in the August 19, 2014 hearing, I intend to give the following instruction at

the outset of the case:

> The Secretary has the authority to certify individuals for eligibility for a kind of visa that can allow an individual to extend his or her stay in the US and to work during that time. Once an individual is certified, another agency in a different department of the government, USCIS, determines whether to grant the visa. In this case, the Secretary has certified eleven former employees as eligible for this kind of visa. The only relevance that this has to this case is whether a witness has been told how to testify by anyone, if a witness received any promises of an immigration benefit if he or she testifies in a certain way, or if he or she has any hopes or expectations of receiving a benefit if he or she testifies in a certain way.

**2. Voir Dire**

As discussed in the August 19, 2014, hearing, I intend to ask the following during voir dire:

> It is the law that workers are entitled to be paid for the hours they work in accordance with federal, state and local wage and hour rules. That is true regardless of whether an employee is a citizen, has work authorization or is undocumented. Is there anyone who would not be able to follow the law in this regard?

**3. Questions Regarding Immigration Benefits**

As discussed in the August 19, 2014, hearing, these are the questions that counsel may ask the witnesses regarding immigration benefits. The parties should not refer to "U-Visas" but they may refer to "visas" and "immigration benefits":

  i. Has a witness been promised an immigration benefit in exchange for his testimony. If, yes, defendants may explore what has been promised.

  ii. Has a witness received a visa already as a result of cooperating with the Department of Labor in this case or in agreement for testifying?

  iii. Does the witness have a hope or expectation that he will receive an immigration benefit based on cooperating with the DOL or testifying in this case?

  iv. Has a witness been advised or told how to testify in order to obtain an immigration benefit?

  v. How did the witness learn about the possibility of obtaining immigration benefits?

In addition, I do not know what the testimony will be, but if it is that defendants terminated people because they learned they were undocumented, that fact is relevant. If the evidence is that defendants threatened employees with deportation/termination if they cooperated with the Secretary's investigation, then that is relevant and questions may be asked on these topics as well.

**4. Production of Witness Statements Collected by the Department of Labor**

I have reviewed *in camera* the I-918, Supplement B forms filled out by the Department of Labor as part of the certification of 11 of the witnesses. I have also reviewed the witness statements (taken down first in Spanish and then translated and typed into English) by the Department's representative. As discussed in the August 21, 2014 hearing, the Secretary shall produce the witness statements (handwritten and typed) to defendants for their review and possible use at trial by 10 a.m. on August 22, 2014. The "additional notes" section of Mr. Viera's statement should be redacted because it does not purport to be a verbatim statement from Mr. Viera. The Secretary shall also produce paragraph two of the Paster Declaration submitted in camera, so that defendants understand the context of how the statements were taken. The I-918 Supplement B forms themselves are not relevant and will not be produced. Defendants will not be allowed to challenge or attack the Secretary's certifications, the legitimacy of those certifications or the determinations (or lack thereof) by USCIS because those topics are irrelevant to the issues in this trial.

**5. Confidentiality of Information Regarding Immigration Benefits**

As discussed in the August 21, 2014 hearing, I ORDER that any information regarding witnesses applications for U-Visas (including the list of witnesses certified by the Department of Labor and the witness statements collected by the Department from witnesses) may be used by counsel and their clients only for purposes of this litigation. The Court, however, will not close the courtroom during trial when questions touching on visas and immigrations are asked.

**6. Motion to Lift the Stay**

In the late afternoon of August 20, 2014 – five days before the start of trial and one day after I denied defendants' motion to continue the trial – I received notice that defendants had filed Chapter 11 and Chapter 13 bankruptcy petitions. This morning (August 21, 2014) the Secretary filed an emergency motion to lift the automatic stay. The Secretary argues that under 11 U.S.C. § 362(b)(4), this action is exempt from the stay. That statute provides that the "commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's [ ] police and regulatory power" is exempt from the automatic stay provision of the

3

Bankruptcy Code.

Defendants filed an opposition to the motion to lift the stay, questioning whether this Court has the power to do so and whether § 362(b)(4) applies to the Secretary's action. The Secretary and the defendants appeared at this afternoon's hearing to argue the matter. As discussed in the hearing, I GRANT the motion to lift the stay as this case is exempt under § 362(b)(4).

I find that I have jurisdiction to determine whether this action falls within the scope of the exemption in § 362(b)(4). *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 (9th Cir. 2005) ("a district court has jurisdiction to decide whether the automatic stay applies to a proceeding pending before it, over which it would otherwise have jurisdiction. Specifically, as applied to this case, we hold that the district court has jurisdiction to decide whether the Attorney General's section 16 Clayton Act suit comes within the exception to the automatic stay for 'police or regulatory power' under § 362(b)(4).").

I also conclude that the "police and regulatory action" exemption applies to this case. In the Ninth Circuit, to determine whether a governmental action falls within the exception, courts look to two alternative tests: the "pecuniary purpose" and the "public policy" test. *City & County of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1124 (9th Cir. 2006). "'Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of safety and welfare.'" *Id.* at 1125 (quoting *Universal Life Church v. United States (In re Universal Life Church, Inc.*), 128 F.3d 1294, 1297 (9th Cir. 1997)). In *CCSF v. PG&E*, the Ninth Circuit recognized that the restitution sought there would not benefit the plaintiffs and, in fact, "will benefit the public welfare by penalizing past unlawful conduct and deterring future wrongdoing." *Id.* at 112. The same is true here. Having found that the pecuniary interest test is satisfied, I need not address the public policy test. *Id.*

However, I find that this action easily satisfies the public policy test. It serves numerous public policy purposes, including but not limited to (1) enforcement of the Department of Labor's regulatory powers under FLSA, (2) deterrence of unlawful behavior by the named defendants, and (3) discouraging others from violating FLSA. This action also seeks an order to enjoin future

FLSA violations by the individual defendants, who are still involved in the restaurant industry.

Given the totality of the claims raised in this action, I find that the automatic stay does not apply under § 362(b)(4).[1]  The case shall proceed to trial at 8:30 a.m. on Monday, August 25, 2014.

**IT IS SO ORDERED**.

Dated: August 21, 2014



WILLIAM H. ORRICK
United States District Judge

---

[1] This result is consistent with numerous court decisions. *See, e.g., Solis v. SCA Rest. Corp.*, 463 B.R. 248, 250, 254 (E.D.N.Y. 2011) ("The DOL's action also satisfies the public policy test. The action enforces the DOL's regulatory powers under the FLSA—specifically, ensuring that covered employees receive minimum wage and overtime compensation, and that employers maintain proper wage and hour records. The injunction sought by DOL would serve to prevent further violations, protect labor conditions, and prevent 'unfair labor competition in the market from companies who pay substandard wages.'"); *Brock v. Am. Messenger Serv., Inc.*, 65 B.R. 670, 671-72 (D.N.H. 1986) (FLSA enforcement action by DOL exempt under § 362(b)(4)); *see also Brock v. Rusco Indus., Inc.*, 842 F.2d 270 (11th Cir. 1988) (DOL action exempt from automatic stay).